**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| JENNIFER ANN CLARK and | ) | |
| ANGELA STEVENS, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO. 09-0694-CG-B** |
| | ) | |
| OFFICER JOHN MILLER, <u>et</u> <u>al.</u>, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on motion of defendants, Allan Carpenter and John Miller, for summary judgment (Doc. 33), the motion of defendants, Vincent Hertz and Mobile County, for summary judgment (Doc. 34), plaintiffs' opposition to both motions (Doc. 36), and defendants' replies in support of their motions for summary judgment (Docs. 42, 43). For the reasons that will be explained below, the court finds that Hertz, Miller and Carpenter are entitled to qualified immunity for plaintiffs' unlawful arrest claims. The court also finds that Mobile County's policies were not the moving force behind plaintiffs' alleged constitutional injuries. As such, summary judgment is due to be granted as to plaintiffs' claims for unlawful arrest and as to their § 1983 claims against Mobile County. The court further finds that summary judgment is due to be granted to the extent that plaintiffs' claims are asserted against the officers in their official capacity. In all other respects, the motions for summary judgment will be denied.

## <u>FACTS</u>

This case arises from events that occurred on November 1, 2007. On that date, defendant Vincent Hertz, a Mobile County Animal Control Officer I, responded to complaints about dogs

running loose in the area of John Semmes Road. (Doc. 34-2). Hertz had previously responded to similar complaints and had left warnings at 4500 John Semmes Road. (Doc. 34-2).

Mobile County adopted a Dog Control Ordinance in 1986 which includes the following:

SECTION 1-4.  RUNNING AT LARGE PROHIBITED
(a) CONFINEMENT OF DOGS ON PRIVATE PREMISES. It shall be unlawful and punishable as a misdemeanor for any person owning, keeping, possessing, harboring or maintaining a dog to cause, permit or allow such dog to be at large on or about any place, lot or premises or portion of same within the county.

(b) RESTRAINT OF DOGS IN PUBLIC PLACES AND OFF PREMISES. It shall be unlawful and punishable as a misdemeanor for any person owning, keeping, possessing, harboring or maintaining a dog to cause, allow or permit such dog to run or be at large upon any street, alley, thoroughfare, sidewalk or public place in the county.

\* \* \* \*

SECTION 1-6.  IMPOUNDMENT OF DOGS FOUND AT LARGE; REDEMPTION PROCEDURE; DISPOSITION OF UNREDEEMED DOGS. Any dog which is found at large on any street, sidewalk, alley, thoroughfare or other place in the county shall be caught and taken by the chief animal control officer, his deputies and assistants and impounded in the City of Mobile Pound. Once accepted by the City of Mobile Pound such dog shall become subject to all rules, procedures and regulations held in force by the City of Mobile.

\* \* \* \*

SECTION 1-9.  IMPOUNDING OF DOGS UPON PREMISES OF OTHER THAN OWNER. Any dog, whether wearing an inoculation tag or not, which is found upon the premises of a person other than the owner or keeper thereof shall, at the request of the owner of such premises or his duly authorized representative, be impounded by the chief animal control officer, his deputies and assistants, and members of the Mobile County Sheriff's Department, or the humane officer as provided in this article. …

SECTION 1-10  INTERFERENCE WITH ENFORCEMENT OF ARTICLE.
(a) It shall be unlawful and punishable as a misdemeanor for any person to hinder, molest or interfere with any person authorized or empowered to perform any duty under this article

(Doc. 33-3, pp. 64-65).

On November 1, 2007, Hertz observed two dogs roaming at large at the end of the driveway at 4500 Semmes Road. (Doc. 34-2). According to Hertz, the dogs were running in between the driveway and the street. (Doc. 38-4, p. 14). Hertz testified that when he pulled up, he blew the horn and then saw one of the dogs run into the house, a 20 lb. Schnauzer. (Doc. 38-8, Doc. 38-2, ¶ 5). Hertz knocked on the door and the owner of the dog that had run in, plaintiff, Jennifer Ann Clark, came to the door with her brother. (Doc. 34-2, Doc. 38-2, ¶¶ 14, 15). The other dog did not belong to the plaintiffs. Hertz discussed the situation with Clark and told her that she had to give him her dog. (Doc. 38-2, ¶ 19). According to Hertz, it was the department's policy that when he witnessed a dog roaming at large, he should ask them to turn over the dog to be impounded, even if the dog is currently confined in the house. (Doc. 38-4, p. 10). Clark told Hertz that her dog does not leave the yard and could not have been the dog that had been complained about. (Doc. 38-2, ¶¶ 21, 22). According to Hertz, Clark began cursing and became irate. (Doc. 34-2, ¶¶ 6, 7). Clark denies having cursed during the conversation, but states that she refused to turn over the dog. (Doc. 38-2, ¶¶ 25, 29). According to Clark, Hertz threatened her with arrest, saying that she could do it the easy way or the hard way. (Doc. 38-2, ¶¶ 28, 29). Clark and her brother told Hertz to leave and she closed her door. (Doc. 38-2, ¶¶ 30, 31). Clark called her friend, plaintiff, Angela Stevens, to come to her house to assist Clark. (Doc. 38-2, ¶ 33). Hertz called his dispatch who then contacted the Sheriff's Office. (Doc. 34-2, ¶ 9). Clark also called the Sheriff's Office for assistance. (Doc. 33-3, pp. 51, 52). Hertz then waited in his truck. (Doc. 34-2, ¶ 9).

Defendant, Officer John Miller, arrived on the scene first. (Doc. 33-3, p. 4). Upon arriving at the scene, the officer walked up to the front porch of Clark's home. (Doc. 38-2, ¶ 35).

Shortly thereafter, defendant, Officer Alan Carpenter, who had been advised that a Mobile County Animal Control Officer needed assistance, also responded to the call and walked up to the porch. (Doc. 33-3, p. 7; Doc. 38-2, ¶ 35). Clark told the officers that her dog was not at large. (Doc. 38-2, ¶ 36). Officer Miller told Ms. Clark that the Animal Control Officer had told him that he had the paperwork to pick up the dog. (Doc. 33-3, p. 8). According to the officers, Clark was irate, refused to hand over her dog and was screaming, using profanity, and making racial remarks towards the Animal Control Officer. (Doc. 33-3, p. 8). Clark reports that she called Animal Control and attempted to give the phone to the deputies so they could talk to them, but the officers would not take the phone. (Doc. 38-2, ¶ 39).

Plaintiff, Angela Stevens, arrived in her automobile and walked up to the porch. (Doc. 33-3, p. 8; Doc. 38-3, ¶¶ 4, 5). According to Hertz and the officers, Stevens told them she was there to pick up the dog. (Doc. 33-3, p. 8; Doc. 34-2, pp. 31-32). Stevens denies saying she was there for the dog, reporting instead that she was there to pick up Clark's baby. (Doc. 38-3, ¶ 21). When Stevens arrived, Clark attempted to go inside and close the door to talk with her in private, but Officer Miller moved forward and stopped the door from closing. (Doc. 38-3, ¶¶ 41, 42). A physical altercation then began which defendants describe very differently than plaintiffs. Under plaintiffs' version, the officers charged in the door and knocked both Ms. Stevens and Ms. Clark to the ground. (Doc. 38-2, ¶¶ 42, 43; Doc. 38-3, ¶ 13). Officer Miller reportedly got on Stevens' back and tasered her several times, then pulled her arms around her back and handcuffed her. (Doc. 38-3, ¶ 13). Clark reports that she was shocked, pushed and thrown against the wall. (Doc. 38-2, ¶ 47). At her deposition, Clark reported that one of the officers tasered her, once in her chest and twice in her stomach. (Doc. 33-3, p. 59). Clark started to kick the officer and he

grabbed her by her arm and slung her across the porch. (Doc. 33-3, p. 60). Clark was also handcuffed and then they were both dragged to the patrol car and put inside. (Doc. 38-2, ¶ 46). Hertz reports that he was then instructed by the officers to go and retrieve the dog from Ms. Clark's home, which he did. (Doc. 34-2, p. 32). Ms. Clark's father and stepmother came to the house while Clark and Stevens were still in the patrol car. (Doc. 38-3, ¶ 19).

Clark and Stevens were both seen at Mobile Infirmary on the day of the incident. Clark's medical records report that there was no evidence of trauma to her body. (Doc. 33-3, p. 32). Clark was ten weeks pregnant at the time and could not be x-rayed. (Doc. 33-3, pp. 29, 30). Stevens, who has cerebral palsy, states that she suffered severe bruises and contusions over her body. (Doc. 38-3, ¶¶ 16, 17, 20). Stevens' medical records show that she had 3-4 taser marks, she experienced pain on movement of her neck, and that she had a sprained ankle (Doc. 33-3, pp. 38, 39, 43). Stevens was prescribed Lortab when discharged from the hospital that day. (Doc. 33-3, pp. 39, 43).

Plaintiffs were charged with resisting arrest and obstruction of a governmental operation. (Doc. 38-3, ¶ 14; Doc. 38-1, p. 2). The cases were tried in the District Court of Mobile County and both Clark and Stevens were found guilty. (Doc. 1, ¶ 38). Clark and Stevens appealed the decision to the Circuit Court of Mobile County, Alabama. (Doc. 1, ¶ 38). The Circuit Court of Mobile County dismissed the complaints against Clark and Stevens. (Doc. 38-1). The Circuit Court reasoned as follows:

> The obstructing governmental operations complaint against Clark charges her
> with refusing to turn over an animal to animal control. However, the plain
> language of the ordinance does not place a duty upon a dog owner to "turn over"
> a dog to be impounded under section 1-6 of the ordinance. Section 1-6 of the Dog
> Ordinance, by its express terms, provides that a dog "found at large … shall be

caught … and impounded…" Clark's dog was <u>observed</u> at large, but the dog was not <u>found</u> and <u>caught</u> at large.

The plain language of the statute indicates that the intent of section 1-6 is to allow dogcatchers to catch and impound dogs found at large, not to require dog owners to turn over dogs that are no longer at large. If the drafter of the Dog Ordinance had intended to require dog owners to turn over dogs not caught while at large, the drafter could have made that intent clear by incorporating such language into the ordinance.

Accordingly, the obstructing governmental operations complaint against Clark is due to be dismissed.

Because the obstructing governmental operations charge is due to be dismissed, the resisting arrest complaint is problematic as well. As Clark points out, a citizen is entitled to resist an unlawful arrest. If a charge against a defendant is determined to be unlawful, a complaint for resisting arrest concerning that unlawful charge cannot stand.

In the case at hand, it is clear there may have been sufficient evidence to charge Clark with the violation of section 1-4 of the Dog Ordinance. However, that offense is a misdemeanor, and for a police officer to effect a warrantless arrest for a misdemeanor the offense must have been committed in the presence of the officer. The evidence is undisputed that neither of the Sheriff's deputies was present when the section 1-4 offense was allegedly committed by Clark.

\* \* \* \* \*

The Sheriff's deputies did not observe the commission of the section 1-4 misdemeanor offense, and the obstructing governmental operations complaint is due to be dismissed. The current complaint against Clark presents no lawful charges to support a claim for resisting arrest. Therefore, the resisting arrest complaint is due to be dismissed.

(Doc. 38-1, pp. 4-6, citations omitted, emphasis in original).

Defendants claim they did not receive Clark's verified notice of claim. However, defendants submitted a copy of a verified notice of claim, dated March 10, 2008. (Doc. 38-12). The verified claim states that Clark "was assaulted, harassed and humiliated in a wanton, negligent and/or intentional manner" on November 1, 2007. The claim states that it is filed:

with the city clerk, City of Mobile, Mobile County, Alabama for punitive

6

> damages, causes of action, compensation and legal redress resulting from and/or because of negligent and/or wanton acts and/or omissions of the Mobile County Sheriff's Department believed to be Deputies Miller and Carpenter and other persons in the employ of the Mobile County Sheriff's Department which resulted in the assault, excessive force, imprisonment, trespass, harassment and humiliation of JENNIFER CLARK.

(Doc. 38-12, p. 1, emphasis in original). The verified claim further states that the "Mobile County Sheriff's Department and Mobile County Animal Control Department contributed to cause the injuries of the claimant by their failure to have adequate policies, failure to train and failure to supervise, and failure to take corrective action following complaints against an officer." (Doc. 38-12, p. 1). Clark claims damages against Mobile County Sheriff's Department and Deputies Miller and Carpenter, in the amount of ten million dollars. (Doc. 38-12, p. 1). Stevens' verified notice of claim is almost identical to the copy of Clark's claim quoted above. (Doc. 34-2, pp. 35-36). Plaintiffs also submitted the copy of a letter dated November 5, 2008, from the office of the Mobile County Attorney referencing the claims of Angela Stevens and Jennifer Clark. (Doc. 38-13).

## LEGAL ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere

existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a

genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Plaintiffs' Claims**

Clark and Stevens assert that Hertz, under color of state law, instigated and caused their unlawful arrest and that Hertz entered and searched Clark's home and seized Clark's animal without her consent, without a warrant and without probable cause. (Doc. 1, ¶¶ 42-43, 59-60).  Clark and Stevens assert that Miller and Carpenter falsely arrested them using excessive force and falsely imprisoned them without probable cause, without a warrant, without consent and without exigent circumstances. (Doc. 1, ¶¶ 46, 47, 63, 64).  Clark also alleges that Miller and Carpenter unlawfully entered her home without her consent, without a warrant and without exigent circumstances. (Doc. 1, ¶¶ 47).  Clark and Stevens assert claims under §1983 against Mobile County for its unconstitutional policies regarding Animal Control which resulted in Clark and Stevens being falsely arrested and imprisoned and Clark's home being unconstitutionally searched and Clark's dog unconstitutionally seized. (Doc. 1, ¶¶ 49-51, 66-68).  Clark and Stevens also assert state law claims against Mobile County based on Hertz's negligence, unskillful and wanton performance of his duties. (Doc. 1, ¶¶ 54-56).

Plaintiffs do not state whether their claims are asserted against Hertz, Miller, and Carpenter individually or in their official capacity; however, summary judgment is due to be granted to the extent they are asserted against them in their official capacity. When an officer is sued under § 1983 in his official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (quoting Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)(internal quotations omitted)).

> Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents. See [Kentucky,] 473 U.S. at 165-66, 105 S.Ct. at 3105; Brandon v. Holt, 469 U.S. 464, 471-72, 105 S.Ct. 873, 877-78, 83 L.Ed.2d 878 (1985); Monell [v. Dept. of Social Services of City of New York], 436 U.S. [658] at 691 [(U.S.N.Y. 1978)], 98 S.Ct. [2018] at 2036 [(1978)]; Farred v. Hicks, 915 F.2d 1530, 1532 (11th Cir.1990). Consequently, a plaintiff cannot rely on a respondeat superior theory to hold a municipality liable for individual actions of its officers. Monell, 436 U.S. at 691, 98 S.Ct. at 2036; Hearn v. City of Gainesville, 688 F.2d 1328, 1334 (11th Cir.1982). "[A] municipality cannot be held liable solely because it employs a tortfeasor." Monell, 436 U.S. at 691, 98 S.Ct. at 2036 (emphasis in original). Instead, in order to recover against a municipality, a plaintiff must establish that the alleged racial discrimination or harassment occurred pursuant to a custom or policy of the municipality. Id. at 694, 98 S.Ct. at 2037; Gilmere v. City of Atlanta, 774 F.2d 1495, 1503 (11th Cir.1985), cert. denied, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); Hearn, 688 F.2d at 1334.
>
> Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond). See Kentucky v. Graham, 473 U.S. at 166, 105 S.Ct. at 3105; Brandon v. Holt, 469 U.S. at 471-72, 105 S.Ct. at 877-78. ...

Busby, 931 F.2d at 776. Based on the above, the court finds that summary judgment is due to be granted to the extent claims are brought against Hertz, Miller and/or Carpenter in their official capacity. However, plaintiffs appear to have asserted individual claims against Hertz, Carpenter, and Miller, and the court will discuss the individual claims, as well as the claims

against Mobile County, below.

**1. Unlawful arrest claim against Hertz**

Plaintiffs claim that Hertz instigated and caused their unlawful arrest. Hertz asserts that he is entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from civil trials ... and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Lassiter v. Alabama A & M Univ.</u>, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (internal quotations and citations omitted). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

To receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Here, it is clear that Hertz was acting within the course and scope of his discretionary authority in responding to a complaint of roaming dogs and stopping and talking to Ms. Clark. Upon encountering resistance from Clark, he called his dispatch, who then called the Sheriff's Office. According to Hertz, it was the department's policy to call the Sheriff's Department for assistance when faced with situations where a dog owner refuses to comply with an officer's commands.

The Eleventh Circuit has abandoned the dichotomy between discretionary and ministerial in the qualified immunity context. <u>Holloman ex rel Holloman v. Harland</u>, 370 F.3d 1252, 1265

(11th Cir. 2004).  The term discretionary authority includes "actions that do not necessarily involve an element of choice." McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995).  The actions are discretionary if "they are of a type that fell within the employee's job responsibilities." Holloman, 370 F.3d at 1265.  In assessing whether an official was engaged in a discretionary function, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Id.  In the instant case, the court finds that stopping to investigate and talk to Ms. Clark about the dogs and calling his dispatch for assistance upon encountering resistance from Clark were legitimate job-related functions that were being pursued through means that were within his power to utilize.  At that point, Hertz was acting within his discretionary authority because his actions were of the type that fell within his job responsibilities.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee, 284 F.3d at 1194.  An analysis of whether qualified immunity is appropriate must begin with the threshold determination of whether, based upon the facts taken in the light most favorable to the party asserting the injury, the officer's conduct violates a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508 (2002).  If no constitutional right was violated, the court need not inquire further. Id.  If, however, a constitutional violation occurred, the court must then determine whether the right was clearly established. Id.

Plaintiffs contend that Hertz violated their Fourth Amendment rights because his conduct

resulted in their wrongful arrest. However, Hertz does not have arrest powers and did not arrest plaintiffs. Plaintiffs, citing <u>Rodriguez v. Ritchey</u>, 539 F.2d 394 (5th Cir. 1976)[1], assert that Hertz's instigation can be the basis for an unlawful arrest claim. Plaintiffs are correct that "in this Circuit, a non-arresting officer who instigates or causes an unlawful arrest can still be liable under the Fourth Amendment." <u>Jordan v. Mosley</u>, 487 F.3d 1350, 1354 (11th Cir. 2007) (citing <u>Rodriguez</u> <u>supra</u>). However, to be actionable, Hertz's conduct must have proximately caused plaintiffs' arrest. <u>See</u> <u>Richardson v. Turpitt</u>, 2008 WL 3911276, 14 (D.Minn. Aug. 19, 2008) (finding that the actions of one of the officers were not a "substantial factor" in the arrest and stating that the issue is whether the officers "proximately caused" the arrest) (citing <u>Jordan</u> <u>supra</u> <u>Rodriguez</u> <u>supra</u> and <u>New v. Fleming</u>, 170 Fed. Appx. 298 (5th Cir. 2006)); <u>see</u> <u>also</u> <u>Id.</u> at 302 (Officer could be held liable because he "played a major role in investigating the incident and actively participated in the decision making process regarding the arrest" and the information he supplied provided the bases for probable cause). "For damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue." <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1168 (11th Cir. 2000). "The causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." <u>Dixon v. Burke County</u>, 303 F.3d 1271, 1275 (11th Cir. 2002).

---

[1] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered before 1 October 1981.

In the instant case, although Hertz called his dispatch seeking the assistance of the Sheriff's Office in attempting to enforce the dog ordinance, Hertz contends that he could not have foreseen that there would be a physical altercation and that plaintiffs would resist arrest. Hertz argues that Officers Miller and Carpenter were autonomous decision-makers and that Hertz did not have any role in the confrontation or the plaintiffs' resistance to the officers' direction. The deputy sheriffs clearly were autonomous decision-makers, as they were the only actors present with authority to make an arrest. The information that Hertz provided to the deputies had a role in their decision-making process, in that they may have relied upon Hertz's assertions in deciding to arrest plaintiffs, but that decision was theirs to make, not the animal control officer's.

Even if the arrests were proximately caused by Hertz' actions, as the court will discuss further below with regard to claims against Miller and Carpenter, plaintiffs' arrests did not violate plaintiffs' constitutional rights because the officers reasonably believed that they had probable cause. For similar reasons, Hertz had arguable probable cause to require Clark to turn over her dog and to inform his dispatcher and the Officers Miller and Carpenter that Clark was violating the ordinance. As such, the court finds that plaintiffs have also not alleged a constitutional violation against Hertz.

Even if plaintiffs have alleged a constitutional violation, the court finds that Hertz is entitled to qualified immunity because the right was not clearly established. Once it has been determined that a constitutional violation has been alleged, the court must determine whether the right was clearly established. Even though the claimed conduct may have violated plaintiffs' constitutional rights, Hertz is still entitled to qualified immunity unless his conduct violates

14

"clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2733, 73 L.Ed.2d 396 (1982). The right was "clearly established," if at the time of the incident, the "pre-existing law... dictate[s], that is, truly compel[s]...the conclusion for every like-situated reasonable government agent that what defendant [was] doing violate[d] federal law in the circumstances." Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994), *overruled on other grounds,* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The plaintiff may not discharge his burden "by referring to general rules and to the violation of abstract 'rights'." Id. at 1150. Qualified immunity is evaluated on the basis of whether the officers acted reasonably under settled law at the time of the challenged action, not "by hindsight, based on later events." Id. at 1150.

Hertz' conduct was based on his understanding that defendants' refusal to turn over the dog violated the dog ordinance and that under the dog ordinance he was entitled to impound a dog even after it had ceased roaming at large. Although the Circuit Court of Mobile County ultimately found that the dog ordinance did not give Hertz such authority, the District Court of Mobile County and Mobile County Animal Control both interpreted the ordinance to allow an officer to require plaintiffs to turn over the dog. The ordinance provides that it was unlawful for a dog owner to permit her dog to roam at large and requires that any dog which is found at large "shall be caught and taken by the chief animal control officer, his deputies and assistants and impounded in the City of Mobile Pound." (Doc. 33-3, pp. 64-65). Hertz found Clark's dog roaming at large and he attempted to obtain and impound the dog. The ordinance does not state that the requirement that the dog be impounded ceases when the dog stops roaming. Plaintiffs

have pointed to no prior case law interpreting the ordinance to mean that impoundment is only permitted when the dog remains at large. After reviewing the circumstances in their entirety, the court finds that it was objectively reasonable for an officer to have believed that the ordinance permitted, and even required, the impoundment of Clark's dog. Therefore, the court finds that Hertz is entitled to qualified immunity for plaintiffs' unlawful arrest, and summary judgment will be granted in favor of Hertz as to plaintiffs' unlawful arrest claims against Hertz.

### 2. Illegal search and seizure claim against Hertz

Clark claims that Hertz violated her Fourth Amendment rights when he entered her home without her permission and retrieved her dog. Hertz contends that he is entitled to qualified immunity. However, it is questionable whether Hertz was acting within his discretionary authority when he entered her home and took her dog since such actions were arguably not legitimate job functions that were within his power to utilize. Even if Hertz was acting within his discretionary authority, the court finds that qualified immunity is not appropriate because his conduct violated Clark's clearly established constitutional rights.

As discussed above, an analysis of whether qualified immunity is appropriate must begin with the threshold determination of whether, based upon the facts taken in the light most favorable to the party asserting the injury, the officer's conduct violates a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508 (2002). In the instant case, Hertz entered Clark's home and took her dog. Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." Hertz did not have a warrant and did not have Clark's permission to enter her home. Although he contends that he was attempting to enforce the dog ordinance and

that one of the officers told him he could go get the dog, Hertz clearly did not have proper authority to enter the home without Clark's permission. The dog ordinance clearly does not authorize Hertz to enter private homes to retrieve animals. Hertz asserts that he relied on the officers' authority that he could go get the dog. However, Hertz has not explained how getting permission from or even being instructed by the officers gave him proper authority to seize Clark's dog from inside her home. See Malley v. Briggs, 475 U.S. 335, 345-346, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (magistrate's issuance of warrant not excuse, as matter of law, for arresting officer's mistake as to probable cause); Lowe v. Letsinger, 772 F.2d 308, 314 (7th Cir. 1985) (judge's direction to judicial clerk not excuse, as matter of law, for clerk's ignorance of right). If the officers told him he could go take other property from her home, that would not have made it right to do so.

Hertz also claims there were exigent circumstances because the dog would have been left unattended. However, even if the dog should not have been left unattended,[2] the evidence indicates that there were other people at the house who could take care of the dog. Clark's father and stepmother arrived at the house while Clark and Stevens were in the patrol car. It is unclear whether this was before or after Hertz retrieved the dog. However, there is also evidence that Clark's brother was inside the house. In fact, Hertz reportedly talked to Clark's brother when he first knocked on the door and spoke with Clark. The court finds that reasonable officers in the

_____

[2] There is no apparent reason why the dog could not have been left alone. Some kind of provision had to be made for the dog if he was going to be left overnight, but there has been no reason offered why the dog would be in peril if left for several hours or for the rest of the day.

same circumstances would have known that they did not have proper authority to enter and take Clark's dog and that there was no crucial need to enter and take her dog without her permission. Therefore, the court finds that summary judgment is due to be denied as to Clark's illegal search and seizure claim against Hertz.

### 3. False arrest claim against Miller and Carpenter

Like Hertz, Officers Miller and Carpenter claim they are entitled to qualified immunity. The officers were clearly acting within the scope of their discretionary authority when they responded to calls from animal control, investigated the matter and ultimately arrested plaintiffs. The question then is whether the officers conduct violated plaintiffs' constitutional rights and whether those rights were clearly established.

In Fourth Amendment terminology, an arrest is a seizure of the person, California v. Hodari D., 499 U.S. 621, 624, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), and the "reasonableness" of an arrest is determined by the presence or absence of probable cause for the arrest. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (per curium) (quotation marks omitted). This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances. See Maryland v. Pringle, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). An officer is not automatically liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause. As the Supreme Court observed in Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), "it is inevitable that law

enforcement officials will in some cases reasonably but mistakenly conclude that probable cause

is present, and we have indicated that in such cases those officials ... should not be held

personally liable."  Thus, even if it is determined that the officers did not in fact have probable

cause, the standard to be applied is that of "[a]rguable probable cause," that is, whether

"reasonable officers in the same circumstances and possessing the same knowledge as the

Defendant[s] could have believed that probable cause existed to arrest." Lee v. Ferraro, 284 F.3d

1188, 1195 (11th Cir. 2002) (quoting Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir.

2001)).  This standard recognizes that law enforcement officers may make reasonable but

mistaken judgments regarding probable cause but does not shield officers who unreasonably

conclude that probable cause exists.

In the instant case, the officers arrested plaintiffs for refusing to turn over the dog and for

resisting arrest.  Although the officers contend that plaintiffs cursed and attacked them, looking

at the facts in the light most favorable to plaintiffs, the court must view plaintiffs' version as

true.  The officers had been contacted by Animal Control and told that Clark's dog had been

found roaming at large and that Clark was required to turn over the dog to be impounded, but

had refused to do so.  Although ignorance of the law will generally not justify an otherwise

unreasonable conclusion that probable cause exists, there was some question in this case as to

what the law allowed or required.  As discussed above, with regard to the unlawful arrest claim

against Hertz, both the District Court of Mobile County and Mobile County Animal Control

interpreted the ordinance in question to allow an officer to require plaintiffs to turn over the dog.

The ordinance provides that it was unlawful for a dog owner to permit her dog to roam at large

and requires that any dog which is found at large "shall be caught and taken by the chief animal

control officer, his deputies and assistants and impounded in the City of Mobile Pound." (Doc. 33-3, pp. 64-65). Although the officers did not find the dog at large themselves, the ordinance also made it unlawful "for any person to hinder, molest or interfere with any person authorized or empowered to perform any duty under this article." (Doc. 33-3, p. 65). Under the circumstances, the court finds it was reasonable for the officers to believe that plaintiffs, by refusing to turn over the dog, were hindering or interfering with the Animal Control Officer's performance of his duties under the ordinance. Accordingly, the court finds that it was reasonable for the officers to believe they had probable cause to arrest plaintiffs, even if they had no actual probable cause.

Even if the officers did not have arguable probable cause, the court finds that plaintiffs have not shown that their rights were clearly established. Miller and Carpenter are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2733, 73 L.Ed.2d 396 (1982). Plaintiffs have pointed to no prior case law holding that the ordinance only permits impoundment when the dog remains at large or indicating that the plaintiff's refusal did not hinder or interfere with the Animal Control officer's duties. Accordingly, the court finds that Miller and Carpenter are entitled to immunity for plaintiffs' unlawful arrest claims and that summary judgment is due to be granted in their favor in that respect.

### 4. Excessive force claims against Miller and Carpenter

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."

20

Brown v. City of Huntsville, Ala., 608 F.3d 724, 737 (11th Cir. 2010) (citing Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002)).   However, Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. See Terry v. Ohio, 392 U.S. 1, 22-27 , 88 S.Ct. 1868, 1880-1883 20 L.Ed.2d 889 (1968).   Though some force is permitted, whether the force is reasonable relies on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Brown, 608 F.3d at 737-38 (quoting Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002)).   Whether a constitutional violation occurred is measured by the "objective reasonableness" standard. Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Brosseau v. Haugen, 543 U.S. 194, 197, 125 S.Ct. 596, 598, 160 L.Ed.2d 583 (2004)).   An officer is entitled to qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive. Graham v. Connor, 490 U.S. 386, 396-397, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989); Brown, 608 F.3d at 738.   Consequently, the Court must focus solely on the objective basis and not the officers' subjective belief. Brown, 608 F.3d at 738 (citing Hadley, 526 F.3d at 1330).

> To balance the necessity of the use of force ... against the arrestee's constitutional rights, a court must evaluate several factors, including "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight."

Id. (quoting Vinyard, 311 F.3d at 1347).

The court finds the amount of force used was excessive considering plaintiffs were

allegedly guilty only of violating a dog ordinance that required them to keep their dog from roaming at large.  Plaintiffs did not pose an immediate threat to the safety of the officers or others and although the officers claim plaintiffs cursed and became physical towards the officers, the plaintiffs' rendition of the incident is contrary.

Under plaintiffs' version, the officers charged in the door and knocked both Ms. Stevens and Ms. Clark to the ground.  Officer Miller reportedly got on Stevens' back and tasered her several times, then pulled her arms around her back and handcuffed her.  Clark reports that she was also tasered, although the court notes that neither the medical records nor the sheriff's department's records showing no discharge of Carpenter's taser support this contention.  Even if Clark was not tasered, she reports that she was pushed and thrown against the wall.  Clark started to kick the officer and he grabbed her by her arm and slung her across the porch.  The plaintiffs were then handcuffed and dragged to the patrol car.  Looking at the facts in the light most favorable to plaintiffs, the court finds that such treatment was not reasonable for a misdemeanor violation of a dog roaming ordinance.  Accordingly, the court finds that summary judgment is due to be denied as to plaintiffs' excessive force claim against Miller and Carpenter.

**5. Unlawful entrance claim against Miller and Carpenter**

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. " <u>Brigham City, Utah v. Stuart</u>, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947 (2006) (citations and internal quotations omitted). "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." <u>Id.</u> (quoting <u>Mincey v. Arizona</u>, 437 U.S.

385, 393-394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)).  Officers Miller and Carpenter assert that they did not enter the home until after the women were arrested and that there was an unattended 18-month-old child in the house and they needed to check on the child's welfare.  " 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " Id. (quoting Mincey, 437 U.S. at 392).

Plaintiffs assert that the officers entered Clark's home to arrest them inside the house. Looking at the facts in the light most favorable to plaintiffs, the court presumes Clark's version of the incident to be accurate.  "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." Welsh v. Wisconsin, 466 U.S. 740, 750, 104 S.Ct. 2091, 2098 (1984) (citation omitted).  "When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." Id. (footnote omitted).  In the instant case, the officers reportedly entered the home to arrest plaintiffs for a misdemeanor violation of a dog roaming ordinance.  The alleged offense was minor and the plaintiffs did not pose an immediate threat to the safety of the officers or others.  As such, the court finds it was clearly unreasonable for the officers to enter Clark's home without a warrant and without her permission.[3]  Accordingly, the court finds that looking at the facts in the light most favorable to plaintiffs, summary judgment is due to be denied as to Clark's claim for

_____

[3] Additionally, it is questionable whether the officers' later reported entry to check on the welfare

unlawful entry by officers Miller and Carpenter.

**6. Claims against Mobile County for its policies resulting in constitutional violations.**

Plaintiffs claim that Animal Control's policies resulted in Clark and Stevens being falsely arrested and imprisoned and Clark's home being unconstitutionally searched and Clark's dog unconstitutionally seized. Mobile County asserts that there is no causal link between any policy and plaintiffs' alleged constitutional injuries.

Municipalities are not wholly immune from liability. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 700, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (overruling Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). However, "it is well established that a municipality may not be held liable under section 1983 on a theory of respondeat superior." Davis v. DeKalb County Sch. Dist., 233 F.3d 1367, 1375 (11th Cir. 2000). In order to be held liable for a § 1983 violation, a municipality must be found to have itself caused the constitutional violation at issue. Monell, at 694-95, 98 S.Ct. 2018; City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The injury must have been caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. In addition, a plaintiff must show "a municipal action was taken with ... deliberate indifference to its known or obvious consequences." Davis, 233 F.3d at 1375-76. In Board of the County Commissioners of Bryan County v. Brown, 520 U.S. 397, 117 S.Ct. 1382 (1997), the test set out above by Monell was subsequently narrowed by the Supreme Court when it stated:

---

of the child was necessary since, as discussed previously, Clark's brother was in the home.

> [I]t is not enough for a § 1983 plaintiff to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404, 117 S.Ct. at 1388.   The plaintiff's burden is heavy.  As noted by the

Eleventh Circuit Court of Appeals:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to respondeat superior liability - a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities ....' " (citing City of Canton [v. Harris], 109 S.Ct. [1197] at 1206 [(1989)]); see also Brown, [520 U.S.] at 415-16, 117 S.Ct. at 1394 ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.").

Gold v. City of Miami, 151 F.3d 1346, 1351 n. 10 (11th Cir.1998). Under § 1983, the "requisite

degree of culpability" is that the municipality acted with at least "deliberate indifference" to the

consequences of its actions.  Plaintiffs must show not only that the officers violated plaintiffs'

constitutional rights, but that the County's policies were the "moving force" behind their injury.

        In the instant case, plaintiffs have presented evidence that it was Mobile County Animal

Control's policy that when an animal control officer witnessed a dog roaming at large, he should

ask the owner to turn over the dog to be impounded, even if the dog is currently confined in the

house.  It was also reportedly Animal Control's policy that when an agent encountered resistance

he was to call his dispatcher and the dispatcher would call the Sheriff's Office.  While such policies may have led to the Sheriff's Office sending officers for assistance, plaintiffs have not shown that the County's policies were the moving force that resulted in the deprivation of plaintiffs' federal rights.  The policies did not require that plaintiffs be arrested and did not directly cause the officers to get into a physical altercation with plaintiffs or to enter Clark's home.   There can be no direct causal relationship when the harm caused resulted from  "the conduct of deliberative and autonomous decision-makers."  See Dixon v. Burke County, 303 F.3d 1271, 1275 (11th Cir. 2002).  The court finds that the while the policies have some connection to the situation, they where not the moving force behind plaintiffs' arrest or the entry into Clark's home by Hertz or Miller and Carpenter.  Therefore, the court finds that summary judgment is due to be granted as to plaintiffs' claims against Mobile County for policies leading to constitutional violations.

**7. State law claims against Mobile County**

Plaintiffs assert state law claims against Mobile County based on Hertz's negligence, unskillful and wanton performance of his duties.  Mobile County asserts that plaintiffs' state law claims fail because plaintiffs have not given Mobile County proper notice of their claim as required by ALA. CODE § 6-5-20. Section 6-5-20 provides the following:

> (a) An action must not be commenced against a county until the claim has been presented to the county commission, disallowed or reduced by the commission and the reduction refused by the claimant.

> (b) The failure or refusal of such a county commission to enter upon its minutes the disallowance or reduction of the claim for 90 days is a disallowance.

> (c) Proof of the fact of presentation of such claim to such county commission may be made by parol evidence.

ALA. CODE § 6-5-20.  Mobile County claimed in its motion for summary judgment that it did not receive Clark's verified notice of claim.  However, defendants submitted a copy of a verified notice of claim by Clark, dated March 10, 2008.  Plaintiffs also submitted the copy of a letter dated November 5, 2008, from the office of the Mobile County Attorney referencing the claims of Angela Stevens and Jennifer Clark.  Mobile County has since conceded that it did receive a notice of claim from both plaintiff Clark and Stevens. (Doc. 43, p. 10, n. 2).

Mobile County also asserts that the verified claims are not sufficiently itemized.  Clark's verified claim states that Clark "was assaulted, harassed and humiliated in a wanton, negligent and/or intentional manner" on November 1, 2007.  The claim states that it is filed, "as required by section 11-47-23 and 11-47-192 of the Code of Alabama":

> with the city clerk, City of Mobile, Mobile County, Alabama for punitive damages, causes of action, compensation and legal redress resulting from and/or because of negligent and/or wanton acts and/or omissions of the Mobile County Sheriff's Department believed to be Deputies Miller and Carpenter and other persons in the employ of the Mobile County Sheriff's Department which resulted in the assault, excessive force, imprisonment, trespass, harassment and humiliation of JENNIFER CLARK.

(Doc. 38-12, p. 1).  The verified claim further states that the "Mobile County Sheriff's Department and Mobile County Animal Control Department contributed to cause the injuries of the claimant by their failure to have adequate policies, failure to train and failure to supervise, and failure to take corrective action following complaints against an officer."  (Doc. 38-12, p. 1). Clark's verified claim seeks damages against Mobile County Sheriff's Department and Deputies Miller and Carpenter, in the amount of ten million dollars. (Doc. 38-12, p. 1).  Stevens' verified notice of claim is almost identical to the copy of Clark's claim quoted above. (Doc. 34-2).

"Section 6-5-20 was enacted to provide county governing bodies with notice of claims against the county and an opportunity to audit and investigate the claims. Marshall County v. Uptain, 409 So.2d 423 (Ala. 1981)." "[T]he itemization provision should not be narrowly construed as applying solely to a breakdown of damages in precise dollar amounts." Elmore County Com'n v. Ragona, 540 So.2d 720, 723 (Ala. 1989). "Rather, the 'items' should include a factual background, a description of the event or transaction giving rise to the claim, the alleged basis for the county's liability for damages resulting from the event or transaction, the nature of the damages, and the compensation demanded." Id. (citing Merrill v. Blount County, 272 Ala. 585, 133 So.2d 212 (1961)).

> Although the notice statutes governing claims against municipalities are not identical to those governing claims against counties, their purposes are the same. Accordingly, our cases construing those statutes, while not directly applicable, are analogous to, and therefore persuasive in the construction of, the statutes applicable to counties, at least insofar as the two sets of statutes do not conflict. In Diemert v. City of Mobile, 474 So.2d 663 (Ala.1985), this Court held that, with regard to claims against municipalities, strict compliance with the notice statutes is no longer required. The Court stated that cities could not complain that relatively minor deficiencies in claims prevent them from acquiring knowledge of actions pending against them. 474 So.2d at 666. This is the more reasonable approach to the notice requirements, and there is no reasonable basis upon which to apply a different standard to claims against counties.

Id. Mobile County specifically objects to the sufficiency of the claim because it "does not make a demand from Mobile County for any monetary damages." (Doc. 34-1, p. 19). The court notes that the claim cites statutes relating to the filing of claims against municipalities, rather than against counties in Alabama.[4] However, Mobile County has not claimed that it did not receive

---

[4] The statutes under which plaintiffs' verified claims state that they were filed provide the following:

Stevens' verified claim and now concedes that it also received Clark's claim. Mobile County's

summary judgment brief admits that "Stevens made a claim on the <u>County</u>," but still denies that

she made a demand for monetary damages. (Doc. 34-1, p. 20, emphasis added). It appears that

Mobile County was on notice of the claim and the amount of monetary damages sought. The

claims state the monetary amount sought and state that the Mobile County Sheriff's Department

and Mobile County Animal Control Department contributed to cause the injuries that occurred

on November 1, 2007, namely "assault, excessive force, imprisonment, trespass, harassment and

humiliation." Thus, it appears that Mobile County was on notice of the claim, the amount of

monetary damages sought, and by whom the alleged damage was done or caused. In light of the

statements by the Alabama Supreme Court in <u>Ragona</u> quoted above, the court finds that

plaintiffs' verified claims were sufficient to notify the County of the factual background, a

description of the event giving rise to the claims, the alleged basis for the County's liability for

damages resulting from the event, the nature of the damages, and the compensation demanded.

As such, the court finds that summary judgment is due to be denied as to plaintiffs' state law

---

No recovery shall be had against <u>any city or town</u> on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed.

All claims against the <u>municipality</u> (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

ALA. CODE §§ 11-47-192 and 11-47-23 (emphasis added).

claims against Mobile County.

## CONCLUSION

For the reasons stated above, the motion of defendants, Allan Carpenter and John Miller, for summary judgment (Doc. 33), and the motion of defendants, Vincent Hertz and Mobile County, for summary judgment (Doc. 34), are **GRANTED** as to plaintiffs' unlawful arrest claims, as to the § 1983 claims asserted against Mobile County and as to any claims asserted against the officers in their official capacity. In all other respects, the motions for summary judgment (Docs. 33 & 34) are **DENIED**.

**DONE** and **ORDERED** this 25th day of February, 2011.


/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE